UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| LARA J. WHITE, Individually and On Behalf of Her Minor Child, V. R. W., JR., and on Behalf of the Estate of VERNON RAMONE WHITE, SR., Deceased    Plaintiff | * * * * * * | CIVIL ACTION NO: 16-1405<br><br>JUDGE |
| VERSUS | * * | |
| LASALLE CORRECTIONS, INC., RICHWOOD CORRECTIONAL CENTER, LLC, WARDEN RAY HANSON, LT. GERALD HARDWELL, CAPT. RODERICK DOUGLAS, CORRECTION OFFICER DANIELLE WALKER and the CITY OF MONROE    Defendants | * * * * * * * * * | MAGISTRATE JUDGE |

**WRONGFUL DEATH AND SURVIVAL ACTION**
**COMPLAINT AND DEMAND FOR JURY TRIAL**

**JURISDICTION**

1. Plaintiff, Lara J. White, brings this cause of action for monetary damages individually and for survival damages on behalf of Lara J. White's husband and V.R.W, Jr.'s father, Vernon R. White, Sr., Deceased, and for declaratory relief and costs of court pursuant to 42 U.S.C. §§1983 and 1988 to redress the deprivation by Defendants, their agents, their employees and others acting in concert with them under the color of state law of the Plaintiff's rights,

privileges and immunities secured by the Eighth and Fourteenth Amendments of the Constitution of the United State, and to redress damages arising under the negligence and intentional tort laws of the State of Louisiana. Jurisdiction is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(1), (2), (3) and (4). Plaintiff alleges pendent jurisdiction and supplemental jurisdiction over state law claims.

## PARTIES

2. Plaintiff, LARA J. WHITE, is a citizen of the United States. Lara J. White is the surviving spouse of the decedent Vernon Ramone White, Sr. V.R.W., Jr. is the natural biological child of the decedent Vernon Ramone White, Sr. Lara J. White and V.R.W., Jr. are the only heirs of Vernon Ramone White, Sr. They are domiciled in the State of Louisiana.

3. Made Defendant herein is LASALLE CORRECTIONS, INC. ("LaSalle"), a private, domestic corporation, whose registered agent listed with the Secretary of State of Louisiana is William K. McConnell, 192 Bastille Lane, Suite 200, Ruston, Louisiana 71270.

4. Made Defendant herein is RICHWOOD CORRECTIONAL CENTER, LLC ("RCC"), a Limited Liability Company, whose registered agent listed with the Secretary of State of Louisiana is William K. McConnell, 192 Bastille Lane, Suite 200, Ruston, Louisiana 71270.

5. Made Defendant herein is RAY HANSON, Warden of RCC, who at all pertinent times served as the chief policymaker for RCC and was responsible for the daily operations of RCC. He is sued in his individual and in his official capacities. He acted at all pertinent times under the color of state law.

6. Made Defendant herein is LT. GERALD HARDWELL, who at all pertinent times was a correctional officer at RCC for LaSalle and who was acting as LaSalle's agent, servant and employee under the color of state law. He is sued in his individual and in his official capacities.

7. Made Defendant herein is CAPT. RODERICK DOUGLAS, who at all pertinent times was a correctional officer at RCC for LaSalle and who was acting as LaSalle's agent, servant and employee under the color of state law. He is sued in his individual and in his official capacities.

8. Made Defendant herein is Correction Officer (hereinafter "C/O") DANIELLE WALKER, who at all pertinent times was a correctional officer at RCC for LaSalle and who was acting as LaSalle's agent, servant and employee under the color of state law. She is sued in her individual and in her official capacities.

9. Made Defendant herein is the CITY OF MONROE. The City of Monroe is a political subdivision of the State of Louisiana. It is sued in its official capacity. The City of Monroe contracted with LaSalle to provide correctional

services to the City.  The City of Monroe failed to adequately to monitor the performance of LaSalle under the contract and failed to discharge its non-delegable duties to inmates housed at RCC, including the duty to train and to adopt policies and procedures so as to prevent inmate-on-inmate violence; the duty properly to monitor inmates; and the duty properly to classify and house inmates.

## FACTS

10. On or around October 13, 2015, Vernon Ramone White, Sr., died from injuries suffered at RCC as a result of the fault and deliberate indifference of Defendants.

11. On October 10, 2015, Mr. White was arrested by Officer Chris Bozeman of the Monroe Police Department on charges of speeding, driving without a license, driving without proof of insurance and contempt of court.

12. Also on October 10, 2015, Officer Bozeman transported Mr. White to RCC.

13. On October 12, 2015, at approximately 6:15 am, Erie Moore, Sr., was arrested by Officer Crowson of the Monroe Police Department on a charge of disturbing the peace through the use of profane language.

14. Also on October 12, 2015, at approximately 7:45 am, Mr. Moore was transported to RCC.

15. At RCC Mr. Moore was placed into Lock Down Cell 7 ("LD7"). LD7 has been described by Sgt. Holyfield of the Ouachita Parish Sheriff's Office as "an isolation cell for problematic inmates". According to Sgt. Holyfield's report, Mr. Moore was placed in LD7 because of erratic behavior, including acts of violence. LD7 is continuously monitored by video camera.

16. On October 12, 2015, at approximately 9:00 pm, Mr. White engaged in a fight with a third inmate, Erin Daniels. As a result, Mr. White was placed in LD7 with Mr. Moore.

17. On the morning of October 13, 2015, Lt. Hardwell and Capt. Douglas learned of an altercation between Mr. Moore and Mr. White in LD7. Mr. Moore and Mr. White were not separated.

18. On October 13, 2015, from 5:00 pm, Moore can be seen in the video record gesticulating wildly, pointing and pacing. At 5:04 pm he fashions an improvised mask from a Styrofoam container and holds the mask to his face. At 5:06 pm he holds the mask to his face again.

19. At 5:13 pm, Mr. White bangs on the door of LD7. There is no apparent response. At 5:14 pm, Mr. Moore embraces Mr. White. Mr. White attempts to escape, but Mr. Moore pulls him back in. At 5:15 pm, Mr. Moore peers out of a small window in the door of LD7. At 5:16–5:17 pm, Mr. White is at the door.

20. At 5:18 pm, Mr. Moore places Mr. White against the wall, puts his hands around Mr. White's neck and then draws back his right arm and makes a fist.

21. At 5:19 pm, Mr. White breaks away from Mr. Moore and then drops to the floor and crawls out of camera range.  Mr. Moore yells or screams at Mr. White.  Mr. White gets up and is again visible to the camera.

22. At 5:20 pm, Mr. Moore faces Mr. White, who is then close to the opposite wall and draws back his fist.  Mr. Moore repeatedly shoves Mr. White, then grabs him by the neck, pushes him against the opposite wall, draws back his fist and points violently with an index finger very close to Mr. White's face.  Mr. Moore moves Mr. White along the wall and then releases Mr. White.

23. At 5:21 pm, Mr. Moore yells or screams at Mr. White.

24. At 5:22 pm, Mr. Moore pushes Mr. White to the floor.  After this, Mr. White is never seen in the video until his seemingly lifeless body is dragged from the cell at 6:08 pm.  From 5:22:10 pm through 5:22:24 pm, Mr. Moore repeatedly kicks or stomps Mr. White.

25. At 5:39 pm, food trays are passed into LD7 through a slot in the lower part of the door.  Mr. Moore takes both trays.  Over time, he eats all or part of both meals.

27. From 5:48 to 6:03 pm, Mr. Moore lies on a blanket on the floor.

28. At 6:07 pm, Mr. Moore removes his pants and begins to defecate on the blanket.

29. At 6:08 pm, fifty minutes after Mr. Moore first threatened Mr. White with his fist and forty-six minutes after Mr. Moore pushed Mr. White to the floor and began to kick and stomp him, corrections officers enter LD7, knock Mr. Moore to the floor and drag the seemingly lifeless Mr. White from the cell.

30. Paramedics were called and Mr. White was taken to University Health – Conway where he was pronounced dead.

31. LD7 was cleaned before the arrival of investigators from the Ouachita Parish Sheriff's Office.

## FIRST CAUSE OF ACTION: FAILURE TO ALERT TO THE NEED TO INTERVENE, FAILURE TO INTERVENE AND FAILURE TO SUPERVISE

32. C/O Walker was charged with monitoring the video from LD7 throughout the entire time that Mr. White was forced to share an isolation cell with Mr. Moore, an erratic and problematic inmate who had been acting violently.

33. C/O Walker failed to alert other corrections officers of the need to intervene to protect the life of Vernon Ramone White, Sr., despite forcing him to share an isolation cell with the dangerous Mr. Moore, subjecting him to fifty minutes of threats, physical attacks and injury by Mr. Moore.

34. LaSalle and Warden Hanson failed to supervise C/O Walker so as to prevent the failure to alert officers of the need to intervene to save the life of Mr. White, as he was being threatened and attacked in plain sight on camera.

## SECOND CAUSE OF ACTION: FAILURE TO MONITOR, CLASSIFY, TRAIN AND IMPLEMENT POLICIES

35. Mr. White was housed in cell LD7, an isolation cell with video monitoring.

36. LaSalle, RCC and Warden Hanson are liable herein for failure to train correctional officers in the proper monitoring procedure and to establish adequate policies. LaSalle, RCC and Hanson failed to set forth an adequate policy regarding monitoring for prisoners at RCC in isolation cells. The policy and training were inadequate since they did not provide for constant observation or other methods of adequate observation and provided only sporadic observation of inmates. The City of Monroe had a non-delegable duty to supervise, train, have adequate policies, classify and monitor LaSalle, RCC and the individual Defendants so that inmates are provided a safe environment and are not injured or killed by other inmates.

37. The failure to implement adequate policy and training resulted in Defendant, C/O Walker's, failing to follow good practices, failing to properly monitor the cell and failing to protect the civil rights of prisoners including Mr. White and was a cause of the violation of Mr. White's rights as described *supra*.

38. C/O Walker was in the control room and was fully responsible for monitoring the video feeds from the cells.  C/O Walker failed to report repeated threats and attacks by Mr. Moore against Mr. White.  She failed to report the fatal beating of Mr. White at the violent hands of Mr. Moore.

39. Inmate Moore accepted his own meal and also Mr. White's meal.  Inmate Moore ate both meals.  There was no sign of communication between Mr. Moore and Mr. White regarding the meals and no sign of the presence of Mr. White.  These facts were not reported by C/O Walker.

40. Inmate White was not seen on the video for more than 45 minutes.  Despite her duty to monitor the video feeds continuously for inmate safety, this was not reported by C/O Walker.

## THIRD CAUSE OF ACTION:  FAILURE TO TRAIN AND FAILURE TO IMPLEMENT ADEQUATE POLICIES

41. Defendants violated Mr. White's rights under the Eighth and Fourteenth Amendments to be free of violent attacks by another inmate.  Mr. White was merely a pretrial detainee who was arrested on minor charges.

42. The failure to implement adequate policy and training was a cause of the failure to intervene and therein a cause of the violation of Mr. White's rights as described *supra*.

## FOURTH CAUSE OF ACTION: FAILURE TO CLASSIFY AND PROTECT INMATES

43. Defendants violated Mr. White's rights under the Eighth and Fourteenth Amendments to be free of violent attacks by another inmate because they had actual or constructive knowledge that Mr. Moore was a violent inmate. Mr. Moore was placed in LD7 for that reason. Thereafter, Mr. White was placed in LD7 *with* Mr. Moore. Other, empty, isolation cells were available, making it entirely feasible to protect Mr. White from Mr. Moore.

44. To house Mr. White with Mr. Moore, a known violent inmate, was a failure to appropriately classify Mr. Moore as an isolation-cell inmate or to appropriately act on the classification.

45. Similarly, Mr. White had engaged in an altercation with another prisoner before he was housed with Mr. Moore. To house Mr. White, after this altercation, with another prisoner was a failure appropriately to classify Mr. White or to appropriately act on the classification.

46. Further, Mr. Moore was transported to University Health – Conway on October 13, 2015. At University Health, he tested positive for PCP. To house an inmate on PCP with another inmate was a failure to appropriately classify or to appropriately act on the classification.

47. On the morning of October 13, 2015, Lt. Hardwell and Capt. Douglas learned of an altercation between Mr. Moore and Mr. White in LD7. Defendants should have separated Mr. Moore and Mr. White to prevent further physical conflict between them.

48. On the evening of October 13, 2015, when Mr. White and Mr. Moore were together in LD7, violent altercations could be observed between them. Defendants should have separated Mr. White and Mr. Moore to prevent further physical conflict between them.

49. The repeated failures to separate Mr. White and Mr. Moore were failures to protect Mr. White.

## FIFTH CAUSE OF ACTION:  STATE LAW CLAIMS

50. Plaintiff alleges violations of Louisiana Civil Code art. 2315. Officers named *supra* and other officers acting in the course and scope of their employment with LaSalle violated Vernon Ramone White, Sr.'s rights under Article I, §5 of the Louisiana Constitution of 1974.

51. LaSalle and RCC are liable for the fault of their officers in failing to classify, act on the classification, separate, monitor, alert to the need for intervention, intervene and protect. LaSalle and RCC are also liable for their failure to train and supervise their officers.

52. Plaintiffs allege violations of Louisiana Civil Code art. 2315 for negligence and intentional acts. Officers named *supra* and others acting in the course and scope of their employment with LaSalle negligently or intentionally allowed or caused the conditions leading to the death of Vernon Ramone White, Sr. Those acts and omissions should be evaluated under Louisiana Civil Code arts. 2323 and 2324.

53. Neither LaSalle nor RCC nor their officers are entitled to qualified immunity under federal law because LaSalle and RCC are private entities.

54. Further, Defendants named *supra* conspired and acted in unison in an effort to deprive Mr. White of his civil rights.

55. The City of Monroe failed properly to supervise the performance of its contract with LaSalle. The City of Monroe has a duty to review LaSalle's performance and a duty to review training. The City of Monroe has a non-delegable duty to provide a safe custodial environment for inmates.

## MISCELLANEOUS PROVISIONS

56. Defendants other than the City of Monroe are not entitled to qualified immunity under federal law because they are private individuals.

57. Because of the malicious and deliberately indifferent actions of Defendants LaSalle and RCC and all individual Defendants toward Mr. White's federally

protected rights, Plaintiff is entitled to an award of punitive damages against each Defendant.

58. Plaintiff demands a trial by jury.

59. Plaintiff brings this survival action on behalf of her husband and father of her Minor Child, VRM, Jr., Vernon Ramone White, Sr., who suffered mental distress, loss of liberty, invasion of privacy, pain and suffering, loss of earning capacity, loss of enjoyment of life, embarrassment and humiliation as a result of the actions of the Defendants. Additionally, Plaintiff brings this wrongful death action individually and on behalf of her minor child, suffering loss of love, affection and society as a result of her husband's and minor child's father's death.

60. Plaintiff is entitled to an award of attorneys' fees and costs under 42 42 U.S.C. §§1983 and 1988.

WHEREFORE, Plaintiff prays that:

1. She be granted a trial by jury.

2. There be judgment herein and against Defendants LASALLE CORRECTIONS, INC., RICHWOOD CORRECTIONAL CENTER, LLC, WARDEN RAY HANSON, LT. GERALD HARDWELL, CAPT. RODERICK DOUGLAS, C/O DANIELLE WALKER and the CITY OF MONROE, *in solido,* in a reasonable amount to be set by the Court, plus

judicial interest, compensatory damages, consequential damages, punitive damages and all costs of court, including attorneys' fees.

3. Such other and further relief as may be just.

Respectfully submitted,

s/ Patrick R. Jackson
PATRICK R. JACKSON
LA Bar No. 25722
Patrick R. Jackson, APLC
4442 Viking Dr., #100
Bossier City, LA  71111
Telephone:  (318) 752-3335
Facsimile:  (318) 752-3315
Attorney for Plaintiff